Hearing Date: July 23, 2013, at 2:00 p.m.

DECHERT LLP
1095 Avenue of the Americas
New York, New York  10036-6797
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599
Michael J. Sage
Brian E. Greer
David A. Kotler
Nicole B. Herther-Spiro

*Attorneys for 450 Lex Private Limited, ABR Property LLC, TCR Property LLC, LQR Property LLC, LQR Golf LLC, LQR La Quinta, Inc., GWR Wailea Property LLC, and GWC Miami Property LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
                                                           :
In re:                                                     :    Chapter 11
                                                           :
MSR HOTELS & RESORTS INC.,                                 :    Case No. 13-11512 (SHL)
                                                           :
                           Debtor.                         :
                                                           :
---------------------------------------------------------- X

**STATEMENT OF GIC RE IN RESPONSE TO (I) FIVE MILE'S
REPLY TO OBJECTIONS TO ITS MOTION TO CONVERT AND
(II) THE DEBTOR'S BIDDING PROCEDURES AND SALE MOTION**

450 Lex Private Limited, ABR Property LLC, TCR Property LLC, LQR Property LLC, LQR Golf LLC, LQR La Quinta, Inc., GWR Wailea Property LLC, and GWC Miami Property LLC (collectively, "GIC RE") file this statement (the "Statement") in response to (I) the reply [Docket No. 70] (the "Five Mile Reply") filed by Five Mile Capital Partners LLC ("Five Mile") to objections to its *Motion for an Order Converting the Debtor's Case to Chapter 7 Pursuant to 11 U.S.C. § 1112(b) or, in the Alternative, Appointing a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)* [Docket No. 49] (the "Motion to Convert") and (II) the *Motion of MSR Hotels & Resorts, Inc. for Entry of an Order (A) Approving Bidding Procedures and Bid Protections,*

18362607

*(B) Scheduling Bid Deadlines and an Auction, and (C) Approving the Form and Manner of Notice Thereof and an Order Approving the Sale of the Resort Marks* [Docket No. 34] (the "Bidding Procedures and Sale Motion"). GIC RE respectfully states as follows:

## I.     GIC RE Already Owns the Intellectual Property

1. As MSR Hotels & Resorts, Inc. (the "REIT Debtor") is well aware, GIC RE has consistently taken the position that under the *Findings of Fact, Conclusions of Law, and Order Confirming the Second Amended Joint Plan of Reorganization of MSR Resort Golf Course LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [S.D.N.Y. Bankr. Case No. 11-10372, Docket No. 2071] (the "Resorts Confirmation Order") and the *Second Amended Joint Plan of Reorganization of MSR Resort Golf Course LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [S.D.N.Y. Bankr. Case No. 11-10372, Docket No. 2061] (the "Resorts Plan"), GIC RE purchased not only all of the rights of MSR Resort Golf Course LLC and its affiliated debtors (the "Resorts Debtors") under their trademark license agreement with the REIT Debtor, dated December 9, 2011, and their trademark license agreement with MS Resort Purchaser LLC ("MS Purchaser"), dated November 16, 2011, but each stated to be effective as of April 12, 2007 (together, the "License Agreements"), but also the Resorts Debtors' legal and equitable ownership of all of the intellectual property (collectively, the "Resorts IP") associated with the Arizona Biltmore Resort & Spa, the Grand Wailea Resort Hotel & Spa, the La Quinta Resort & Club PGA West, the Claremont Resort & Spa, and the White Course (collectively, the "Resorts"). The Resorts IP includes registered and unregistered trademarks used by the Resorts (the "Marks"). The REIT Debtor and MS Purchaser have asserted that they are the owners of record of the Marks, which are purported to be licensed to the Resorts under the License Agreements.

18362607                                                           2

2. GIC RE's purchase of all of the Resorts Debtors' legal and equitable rights in the Resorts IP was explicitly provided for in the Resorts Confirmation Order and the Resorts Plan. Specifically, the Resorts Confirmation Order states as follows:

> For the avoidance of doubt, under the Purchase Agreement, the Plan, and this Confirmation Order, all of the Debtors' rights, claims, interests, causes of action, damages, remedies, and equitable claims and interests on account or with respect to all trademarks, trade names, service marks, symbols, logos, and any other intellectual property associated with the Resorts (i.e., the Arizona Biltmore, the Grand Wailea, the La Quinta, the Claremont, and the White Course) shall be and hereby are reserved and assigned to the Purchaser.

Resorts Confirmation Order ¶75; *see also id.* ¶132 (same); Resorts Plan p. 29 (same).

3. The hallmark of a valid trademark license is that the trademark owner and licensor controls the nature and quality of the goods and services provided by the licensee to the public under the licensed marks. A licensor's failure to sufficiently supervise a licensee's use renders the license "naked," and the licensor may be estopped from enforcing the license agreement, or may be deemed to have relinquished ownership of the marks. *See Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 596 (S.D.N.Y. 2010) ("[u]nder the naked licensing doctrine, a naked licensor may be stopped from challenging a breach of a licensing agreement, or even be deemed to have involuntarily abandoned the rights to the mark"); *HSW Enters., Inc. v. Woo Lae Oak, Inc.*, No. 09-8476, 2009 WL 4823920, at *3 (S.D.N.Y. Dec. 15, 2009) ("trademark law imposes an affirmative duty on a licensor to exercise quality control over the licensee's product"); McCarthy on Trademarks and Unfair Competition §18:42.

4. Upon information and belief, the REIT Debtor and MS Purchaser had little involvement in management or oversight of the Resorts prior to GIC RE's acquisition, and as Five Mile has observed, the independent director of the REIT Debtor did not know that it was

owner of record of any Marks as recently as February 2013. *See* Tr. of Confirmation Hearing, Vol. 3, 224:4-7 [S.D.N.Y. Bankr. Case No. 11-10372, Docket No. 2050]; Five Mile Reply ¶13. Upon information and belief, the failure of the REIT Debtor and MS Purchaser to oversee the quality of the Resorts' services offered under the Marks casts significant doubt on the validity of the License Agreements and on the REIT Debtor and MS Purchaser's ownership of the Marks. As such, it is GIC RE's position that the value of the Marks as symbols of the nature of the goods and services offered under the Marks has inured to the benefit of the entities that operated the Resorts, and that interest, along with the Resorts, was purchased by GIC RE under the Resorts Plan.

5. The REIT Debtor and GIC RE have engaged in arms'-length negotiations over ownership of the Resorts IP in connection with the REIT Debtor's Bidding Procedures and Sale Motion. If agreement can be reached, the above issues will become academic. However, in the event no agreement is reached, GIC RE has reserved the right to take any actions it deems necessary to protect its legal and equitable rights with respect to the Resorts IP, including the right to file an adversary proceeding seeking injunctive or declaratory relief.

## II. GIC RE Does Not Speak For or Control the Mortgage Trust

6. On June 20, 2013, 450 Lex Private Limited purchased the COMM 2006-CNL2 Commercial Mortgage Backed Certificates Class DE Certificate (the "DE Certificate"), which represents an ownership interest in the securitized mortgage trust (the "Mortgage Trust") that owns the Resorts Debtors' $1 billion mortgage loan (the "Mortgage Loan"). The DE Certificate entitles the owner to receive the default interest owed under the Mortgage Loan.

7. In the Five Mile Reply, Five Mile has insinuated that because GIC RE now owns the DE Certificate, it now controls the Mortgage Trust and will be able to force Midland Loan Services, Inc., as special servicer ("Midland") to accept a sale of the Resorts IP "at the cheapest

18362607                                            4

price." Five Mile Reply p. 1.  As Five Mile and its counsel are well aware, in bankruptcy, being the owner of a certificate in a securitized mortgage trust is tantamount to being an investor in a creditor, and nothing more.  *See In re Innkeepers USA Trust*, 448 B.R. 131, 143-45 (Bankr. S.D.N.Y. 2011) (Five Mile was represented by the Kasowitz firm in this bankruptcy case as well).  GIC RE does not and cannot represent or speak for the Mortgage Trust in connection with the REIT Debtor's bankruptcy.

8.     Moreover, in connection with the Resorts Debtors' bankruptcy cases, the Court has already considered and ruled on Five Mile's argument that Midland is "controlled" by the certificate holders.  Following lengthy discovery and an evidentiary hearing in October 2012, the Court ruled that Five Mile had failed to prove that Midland was controlled by GIC RE or the controlling certificate holder under the Mortgage Trust, but rather that "the evidence submitted refute[d] Five Mile's arguments." Tr. Bench Ruling re: Good Faith Hearing 22:18-22 [S.D.N.Y. Bankr. Case No. 11-10372, Docket No. 1819].  The evidence demonstrated that Midland acted independently of the controlling certificate holder, *id*. 24:9-1, as "amply demonstrated by Midland's vehement objection during an extended evidentiary hearing to the GIC settlement," *id*. 26:2-4, and that under the relevant agreements, Midland had no obligation to follow the direction of the controlling certificate holder if the direction violated the servicing standard or applicable law.  *Id*. 26:21-25; *see also id*. 21:7-27:15 (considering at length and rejecting Five Mile's challenge to Midland's actions and impartiality).  Moreover the Mortgage Trust documents do not provide the holder of the DE Certificate with any control rights over Midland.

9.     Accordingly, GIC RE's purchase of the DE Certificate does not in any way alter the facts or equities of the REIT Debtor's bankruptcy case, as Five Mile frivolously suggests.

18362607                                  5

### III.    GIC RE Has Not and Could Not Waive Any Rights of the Mortgage Trust

10.    On June 7, 2013, Mr. Adam Gallistel of GIC Real Estate, Inc. filed a declaration on behalf of certain GIC RE affiliates in support of their brief in opposition to Five Mile's appeal from the Resorts Confirmation Order [S.D.N.Y. Case No. 13-2448, Docket No. 15] (the "June 7 Declaration").  In the June 7 Declaration, Mr. Gallistel described the settlement of the Mortgage Trust's default interest claims under the Resorts Plan as follows: "although approximately $63.8 million of default interest was owed under the Mortgage Loan, Midland agreed to accept $7,825,660 cash as payment in full of all of its default interest claims *against the Debtors*."  June 7 Declaration ¶5 (emphasis added).  The Five Mile Reply ignores this clear statement and quotes a bullet point in paragraph 8 of the June 7 Declaration that omits the words "against the Debtors" as support for its false contention that "Just last month, GIC declared under penalty of perjury that all claims under the Mortgage have been fully satisfied."  Five Mile Reply p. 1 (emphasis in original).  Five Mile intentionally misreads the June 7 Declaration, ignores the specific language of the Resorts Confirmation Order, and implies, without basis, either that Mr. Gallistel submitted a false statement or that by this statement the default interest claims of the Mortgage Trust were somehow waived.  These implications are false and offensive for several reasons.

11.    First, by quoting the bullet point in paragraph 8, Five Mile pointedly ignores the more specific language in paragraph 5 of the June 7 Declaration in favor of a concocted sound bite taken out of context.  Nevertheless, to alleviate Five Mile's confusion – contrived or otherwise – the June 7 Declaration has been amended to include the words "against the Debtors" in every place where Five Mile might otherwise have sought to misconstrue the June 7 Declaration.  *See* Amended Declaration of Adam Gallistel [S.D.N.Y. Case No. 13-2448, Docket No. 27].

12.     Second, for the reasons discussed above, at no time has GIC RE had the ability to speak for the Mortgage Trust, let alone waive any of its claims.  Furthermore, when the June 7 Declaration was submitted to the District Court, GIC RE did not own the DE Certificate.

13.     Third, as Five Mile well knows, the Mortgage Trust's right to assert its default interests claims against the REIT Debtor was specifically preserved in the Resorts Confirmation Order.  Specifically, the Resorts Confirmation Order provides:

> Nothing in the Plan or this Confirmation Order shall (a) affect, or preclude Midland from asserting, any unpaid claim or right, including on account of unpaid interest, that Midland might have against MSR Resorts [i.e, MSR Hotels & Resorts Inc.] or MS Resort Purchaser LLC (or their successors or assigns) with respect to any guarantee or grant of lien or security interest for the benefit of the Mortgage Lender in connection with the Mortgage Loan, provided that such preserved claim or right is non-recourse beyond the collateral pledged to the Mortgage Lender under (i) that certain Trademark Security Agreement (as such agreement may have been amended from time to time), dated January 9, 2006, among certain of the Debtors and MSR Resorts and (ii) that certain Joinder to and Modification of Trademark Security Agreement (as such agreement may have been amended from time to time), dated May 30, 2008 among certain of the Debtors, MSR Resorts and MS Resort Purchaser LLC; or (b) preclude Midland from enforcing against such collateral, any such lien or security interest; provided, however, that all rights, claims, and defenses of MSR Resorts and MS Resort Purchaser LLC (and their successors and assigns) are similarly reserved.

Resorts Confirmation Order ¶123.  Accordingly, the implication in the Five Mile Reply that the June 7 Declaration somehow establishes that the Mortgage Trust's default interest claims are extinguished and the Mortgage Loan has been paid in full is (like a good many of Five Mile's other contentions) utterly baseless.

14.     The issues addressed in this Statement by no means cover all of the incorrect statements of law and fact contained in the Five Mile Reply.  GIC RE accordingly reserves all of its rights with respect to the Five Mile Reply and the sale of the Resorts IP, including the right to be heard at the hearings on the Motion to Convert and the Bidding Procedures and Sale Motion

and to commence an adversary proceeding to enforce and protect GIC RE's ownership of the Resorts IP.

Dated: New York, New York
July 19, 2013

    Respectfully submitted,

    DECHERT LLP

By: */s/ Brian E. Greer*
Michael J. Sage
Brian E. Greer
David A. Kotler
Nicole B. Herther-Spiro
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
michael.sage@dechert.com
brian.greer@dechert.com
david.kotler@dechert.com
nicole.hertherspiro@dechert.com

*Attorneys for 450 Lex Private Limited, ABR Property LLC, TCR Property LLC, LQR Property LLC, LQR Golf LLC, LQR La Quinta, Inc., GWR Wailea Property LLC, and GWC Miami Property LLC*